HERMAN FRANCK (S.B. #123476)
Law Offices of Herman Franck
1801 7TH Street, Suite 150
Sacramento, California 95814
Tel. 916-447-8400

Attorney for Plaintiff
Karen Ann

FILED

07 APR 10 PM 3: 21

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

KAREN ANN,

        Plaintiff,

vs.

ROY TINDLE, HEATHER BLOUGH, GARY ONETO, TINA ONETO and BAECHTEL CREEK VILLAGE

        Defendants,

C 07 2031

Case No.

COMPLAINT FOR DAMAGES, AND DECLARATORY RELIEF FOR VIOLATION OF THE FEDERAL, CIVIL RIGHTS ACT

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

1

Plaintiff KAREN ANN alleges and states as follows:

## I.
## JURISDICTION AND VENUE

1. The U.S. District Court has jurisdiction over this 42 U.S.C. Section 1983 action alleging violations of Plaintiff's federal constitutional rights under 42 U.S.C. Sections 1331 and 1343. The court has supplemental jurisdiction over State Law claims pursuant to 28 U.S.C. Section 1292 (b).

2. Venue is proper under 28 U.S.C. 1391(b)(2) because a substantial portion of the events giving rise to the claims alleged in this Complaint arose within the Northern District of California, in the County of Mendocino.

## II.
## PARTIES

3. Plaintiff KAREN ANN is an individual residing in Santa Cruz County.

4. Roy Tindle is an individual sued herein for damages in his individual and personal capacity, and Residing in Mendocino County.

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

2

5. Heather Blough is an individual sued herein for damages in her individual and personal capacity, and Residing in Mendocino County. Roy Tindle acted at and time under color of legal authority from Mendocino County.

6. Gary Oneto is an individual sued herein for damages in his individual and personal capacity, and Residing in Mendocino County. Gary Oneto acted at all times under color of legal authority from Mendocino County.

7. Tina Oneto is an individual sued herein for damages in her individual and personal capacity, and Residing in Mendocino County. Tina Oneto acted at all times under color of Legal authority from Mendocino County.

8. Baechtel Creek Village is a Management company appointed by the Mendocino County Government to manage the Residential Promises Located at 61 Alder Court, Willits CA 95490, and the owner/ manager of the senior home facility where the events took place Baechtel Creek Village is Liable as a person acting under color of Legal authority, given it by Mendocino County.

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

3

## III.
## FIRST CLAIM FOR RELIEF FOR VIOLATION OF
## THE FEDERAL CIVIL RIGHTS ACT [42 USC SEC. 1983]
(Against and Defendants)

9. This is a first claim for relief by Karen Ann against defendants Roy Tindle, Heather Blough, Gary Oneto, Tina Oneto and Bechtel Creek Village for violation of the Federal Civil Right Act, 42 U.S.C. Section 1983.

10. KAREN ANN has a protectable procedural and substantive due process right in the renewal of her lease. [Exhibit A hereto] This interest is protectable under the Fifth Amendment and Fourteenth Amendment Due Process clauses of the United States Constitution.

11. The Defendants, and each of them, while acting under color of state law in connection with their positions as County Seniors home managers and Property owners, intentionally and knowingly violated KAREN ANN's substantive due process rights under the Fifth Amendment and Fourteenth Amendment Substantive by the conduct described herein.

12. During July 8, 2004, Karen Ann entered into a written lease with defendant Bechtel Creek Village Management. A copy of the lease is attached hereto as Exhibit A.

13. The lease provides for an automatic renewal in paragraph 2.

"Renewal of lease: Automatic renewal of lease and monthly rent:
This lease shall be automatically renewed for successive term of twelve moths,
at the rental of $157.00 per month, or at such rental as may hereafter be established
an accordance with paragraph 8 of this lease. As further condition to renewal of
lease, resident must comply with the community service requirements as more fully
described herein."

14. The defendants Roy Tindle, Heather Blough, Gary Oneto, Tina Oneto and Baechtel Creek Village arbitrarily, irrationally, and capriciously refused to renew the lease on May 24, 2005. They did this by a hearing on the matter, and took a vote on 5/25/05.

15. The renewal was refused due to plaintiff's series of efforts to bring tenant issues to the attention of managers Gary Oneto and Tina Oneto. The issues brought to their attention include:

a) Vector Mosquitos

b) Feral Cats

c) Smoking in building

d) Prohibition from planting flowers

e) Failure to repair, Units

f) Whistle blower

g) Reporting Manager to DEA for growing pot

h) Refuse to Extend le case beyond June 30, 2006, Community Dec Comm Baechtel Creek Village Willid

i) Failee to reneed as retaliation not dealing with Vector Mosquitoes, Feral Cat etc

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

5

Use of garden

Smoking by visitors and some guests [not allowed, but this rule was being violated all the time]

16. Karen Ann has a background as a social worker, and tenants took it upon themselves to ask her to help them with their issues. Karen Ann did this, and when she did, the Gary Oneto become upset with her, and retaliated against her for having become a problem tenant.

17. Karen Ann took the issues up with other county officials, including

18. Her only problem was that she was trying to solve issues, and management didn't want to fix those issues.

19. The matter came to a final decision on September 23, 2005, when defendants Roy Tindle, Heather Blough, Gary Oneto, Tina Oneto and Baechtel Creek Village decided to not renew the lease term for another 12 month period.

20. Defendants then collectively brought forward an eviction procedure, and plaintiff was forced to leave the facility against her desire. Plaintiff was evicted as of January 20, 2006.

21. Defendant conduct in refusing to re new the lease was arbitrary, Caricious and irrational in that it was motivated by retaliation against plaintiff for having brought forward a series of tenant issues. There were no valid reasons or rationales not to re new the lease.

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

6

22. Defendants arbitrary, capricious and irrational decision not to re new the lease violated plaintiff's substantive due process rights arising under the 5th and 14th Amendment to the United States Constitution, and constitute a violation of the Federal Civil Rights Act, 42 U.S.C Section 1983.

23. Defendants' conduct was intentional, and was done deliberate indifference and conscious disregards of plaintiffs' property rights to a renew of the ;ease, and further interfered with and damaged plaintiffs' rights to quiet enjoyment of the premises.

24. Defendants' conduct proximately caused plaintiff general damages and damages to her right to quiet enjoyment in an amount according to proof but in excess of $500,000.00.

25. Plaintiff further requests Declaratory Relief in the form of an Order or Judgment stating that the Defendants did violate the Plaintiff's substantive due process rights under the Fifth Amendment and Fourteenth Amendment, due to their conduct as described above.

26. Plaintiff has retained an attorney to represent her in this matter, and seeks an award of attorney's fees in an amount according to proof, and pursuant to the Federal Civil Rights Act, 42 USC Sec. 1988.

27. Defendants' conduct was intentional, and was done with deliberate indifference and conscious disregard of plaintiff's property rights to a renewal of the lease, and further interfered with and damaged plaintiff's right to quiet enjoyment of the

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

7

premises, and proximately caused plaintiff general damages in an amount according to proof but in excess of $500,000.

28. Defendants conduct was intentional wanton and oppressive and constitutes a basis for exemplary damages in an amount according to proof.

WHEREFORE Plaintiff Prays for Relief as Set Forth below:

## IV.
## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

29. This is a second claim for relief for breach of written agreement by Plaintiff Karen Ann against defendant Bechtel Creek Village only.

30. During July 8, 2004 Karen Ann entered into a written lease with defendant Bechtel Creek Village Management. A copy of the lease is attached hereto as Exhibit A.

31. The lease provides for an automatic renewal in paragraph 2:

"Renewal of lease: Automatic renewal of lease and monthly rent: This lease shall be automatically renewed for successive term of twelve moths, at the rental of $157.00 per month, or at such rental as may hereafter be established an accordance with paragraph 8 of this lease. As further condition to renewal of lease, resident must comply with the community service requirements as more fully described herein."

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

32. Plaintiff has performed the various covenants and obligations required of her under the lease.

33. Defendants Baechtel Creek Village breached the contract on September 23, 2005, by refusing to when renew the lease and thereafter instituting eviction Proceedings.

34. The renewal of lease was refused due to plaintiff's series of efforts to bring tenant issues to the attention of managers Gary Oneto and Tina Oneto.

35. Defendant brought forward an eviction procedure, and plaintiff was forced to leave the facility against her desire. Plaintiff was evicted as of January 20, 2006.

36. As a proximate result of Gary Oneto' breach of contract, plaintiff lost the value of a renewal of the lease, which is the form of a property rights. Plaintiff further suffered a violation of her quiet enjoyment of the premises for the renewal period, in an amount according to proof but in excess of $500,000.

37. Plaintiff requests Attorneys fees according to proof pursuant to the written terms of the lease.

WHEREFORE Plaintiff Prays for Relief as Set Forth below:

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

# V.
# PRAYER

WHEREFORE, Plaintiff prays for relief as follows:

1. For judgment in Plaintiff's favor against each of the Defendants Roy Tindle, Heather Blough, Gary Oneto, Tina Oneto and Baechtel Creek Village, according to proof but in excel of $500,000.

2. For declaratory relief as requested above.

3. For attorney's fees in an amount according to proof as requested above.

4. For costs of suit; and

5. For such other and further relief as the Court deems just and proper.

Respectfully submitted:

*/s/ Herman Franck*                                            Dated: April 9, 2007

Herman Franck, Esq.
Attorney for Plaintiff
KAREN ANN

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

10

## DEMAND FOR JURY TRIAL

Plaintiff KAREN ANN hereby requests a jury trial on all claims Tribal to a jury.

Respectfully submitted,

_____   Dated: April 9, 2007

Herman Franck, Esq.
Attorney for Plaintiff
Karen Ann

COMPLAINT FOR DAMAGES,
AND DECLARATORY RELIEF FOR VIOLATION OF
THE FEDERAL CIVIL RIGHTS ACT

11

## Resident Dwelling Lease Agreement

Project No. Cal_____

| NAME OF RESIDENT(S) | | NO. PERSONS | BEDROOMS |
|---|---|---|---|
| | KAREN ANN | 1 | 1 |
| 31 ALDER COURT<br>WILLITS CA 95490 | | EFFECTIVE DATE | MONTHLY RENT |
| | | 7/8/2004 | $157.00 |

The COMMUNITY DEVELOPMENT COMMISSION OF MENDOCINO COUNTY HOUSING AUTHORITY (hereinafter "MANAGEMENT"), relying upon the written statements made in the RESIDENT'S application for housing, which is hereby incorporated in and made a part of this lease, does hereby lease to

_____KAREN ANN_____
(Hereinafter "RESIDENT")

the address as generally described above (hereinafter the "dwelling unit"), under terms and conditions stated below:

1. **TERMS OF LEASE:** This lease shall be for a period of twelve months.

2. **RENEWAL OF LEASE: AUTOMATIC RENEWAL OF LEASE AND MONTHLY RENT: THIS LEASE SHALL BE AUTOMATICALLY RENEWED FOR SUCCESSIVE TERMS OF TWELVE MONTHS, AT THE RENTAL OF $____157.__ PER MONTH, OR AT SUCH RENTAL AS MAY HEREAFTER BE ESTABLISHED IN ACCORDANCE WITH PARAGRAPH 8 OF THIS LEASE. AS A FURTHER CONDITION TO RENEWAL OF LEASE, RESIDENT MUST COMPLY WITH THE COMMUNITY SERVICE REQUIREMENTS AS MORE FULLY DESCRIBED HEREIN. THERE IS AN EXCEPTION TO THE AUTOMATIC RENEWAL OF THE LEASE FOR NONCOMPLIANCE WITH COMMUNITY SERVICE MONTHLY REQUIREMENTS. RENT IS PAYABLE IN ADVANCE ON THE FIRST DAY OF EACH CALENDAR MONTH UNLESS TERMINATED BY EITHER PARTY AS HEREIN PROVIDED.**

3. **MEMBERS OF HOUSEHOLD:** This agreement is between RESIDENT(S) and MANAGEMENT. Occupancy under this lease is limited to the RESIDENT(S) named above and the following members of the household:

   * NO OTHERS
   *
   *
   *
   *
   *

4. **RENTAL PAYMENTS:**

   a. The monthly rental amount is $____157.__ subject to <u>the utility cost provisions in Paragraph 6</u> and shall be due and payable in advance on or before the first day of each month, beginning on the month following the date of this Lease.

   b. Rent for the initial period under this Lease in the amount of $_126.00_ is due and payable at the time this Lease is executed. Thereafter, the RESIDENT shall pay the full month's rental as provided above on the first day of each month. RESIDENT shall be personally responsible for rent payments due.

   c. LATE FEE – A late fee of $30.00 will be charged if rent is not paid by the close of business on the 5th day of each month. For RESIDENTS who are required to mail their rent in, a postmark of the 5th of the month will be considered a timely payment. RESIDENT agrees that this Late Fee, which shall be considered "additional rent", does not establish a grace period, is reasonable and is to reimburse MANAGEMENT for the administrative costs and expenses when the rent is not received on or before the first of each calendar month. As required by law, RESIDENT is hereby notified that a negative credit report reflecting upon the RESIDENT'S credit record may be submitted to a credit reporting agency if RESIDENT fails to pay rent on time.

   d. In the event this Lease is terminated by RESIDENT as set forth in Paragraph 19 any rents paid or due shall be pro-rated daily after the date of expiration of the thirty-day (30) notice period. In the event RESIDENT vacates the unit without notice, s/he shall be charged with rent for the thirty-days (30) after MANAGEMENT learns of the vacancy. Rental credits or charges shall be based upon a uniform thirty-day (30) month. This rent will remain in effect unless adjusted in accordance with the provisions of Paragraph 8 and/or 9.

   e. IT IS EXPRESSLY UNDERSTOOD AND AGREED that in the event the RESIDENT is transferring from another MANAGEMENT –operated dwelling unit, payment of any unpaid balance due under the previous lease shall become a part of the consideration for this Lease.



Adopted 12/20/01 Resolution #752          1

5. **SECURITY DEPOSIT:**

   a. Upon signing of this lease agreement, and in addition to the monthly rental payments required in Paragraph 4, the RESIDENT agrees to pay MANAGEMENT the sum of $_198.00_ as a security deposit. Upon termination of this lease, RESIDENT may request a move-out inspection if that request is made in writing and within 48 hours of the termination. Within three weeks after Resident have vacated the premises, MANAGEMENT shall furnish RESIDENT with an itemized written statement of the reasons for, and the dollar amount of, any of the security deposit retained by the MANAGEMENT, along with a check for any deposit balance. The security deposit money may be applied by MANAGEMENT at the termination of this Lease toward:

      1. The cost of repairing any damage to the premises beyond ordinary wear and tear of the premises; and
      2. The cost of cleaning of the premises; and
      3. Any rent or other charges owed by RESIDENT.

   b. The security deposit may not be used to pay rent or other charges while RESIDENT occupies the dwelling unit.

   c. MANAGEMENT shall hold the security deposit in trust for RESIDENT during the term of this Lease. RESIDENT agrees that MANAGEMENT may use any interest earned on the security deposit for RESIDENT services and activities and RESIDENT agrees to waive any right to claim a refund of such interest.

6. **UTILITIES:** Subject to the provisions of subparagraph 6.a hereof, the monthly dwelling rent includes the following utilities (if checked):

   Gas ( )   Electricity ( )   Water (X )   Sewer (X )   Refuse collection (X)

   a. In accordance with the Schedule of Utility Allowances in <u>the STATEMENT OF POLICIES posted in MANAGEMENT'S office. RESIDENT agrees to pay for the use of MANAGEMENT –furnished utilities in excess of such allowances</u>. Excess utility bills shall become due and payable 14 days from written notice by MANAGEMENT to the RESIDENT or upon completion of the Grievance process, if timely requested. Said Notice shall provide that the RESIDENT has the right to ask for an explanation of the charges and, if RESIDENT does not agree with the explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure.

   b. RESIDENT agrees to maintain the above named utility services for utilities not provided by MANAGEMENT during the entire term of this Lease. RESIDENT agrees to promptly pay for all such utilities furnished to the premises.

7. **MAINTENANCE AND REPAIR CHARGES:** RESIDENT shall keep and maintain the premises in a clean and good condition and shall not cause or permit any garbage, rubbish or debris to accumulate therein or upon the grounds surrounding the premises <u>and shall not place or construct any structure or improvement of any kind whatsoever upon the building or grounds consisting of the premises or grounds surrounding the premises.</u>

   RESIDENT shall use reasonable care to keep his dwelling unit in such condition as to prevent health or sanitation problems from arising. RESIDENT shall immediately notify MANAGEMENT promptly of known need for repairs to his dwelling unit, and of known unsafe conditions in or about the dwelling unit, the common areas, and the grounds of the project, which might lead to damage or injury.

   RESIDENT shall pay MANAGEMENT for repairs and replacements beyond those made necessary by ordinary wear and tear, and for all cleaning made necessary by the acts or neglect of RESIDENT, members of the household, invitees, or guests, for failure to maintain fully the grounds assigned to RESIDENT for maintenance, for services in connection with lock-outs, pick-up of tools or garbage and for any services which are rendered for RESIDENT and not otherwise expressly provided for under the terms of this Lease.

   MANAGEMENT shall make all necessary repairs, alterations, and improvements to the dwelling unit as promptly as possible and give special attention to cases involving damage affecting health or safety. The RESIDENT does hereby waive all rights to make repairs upon the Premises at the expense of MANAGEMENT, excepting only, and to the extent only, as expressly permitted by Section 1942 of the Civil Code of the State of California.

   If MANAGEMENT uses an outside contractor to make repairs, the basis for charges to the RESIDENT shall be the bill submitted to MANAGEMENT plus a reasonable overhead as determined from time to time. If MANAGEMENT employees do the repair work, the basis for the charges to the RESIDENT shall be the Schedule of Charges for Services and Repairs maintained by MANAGEMENT. Said Schedule of Charges for Services and Repairs are posted in MANAGEMENT'S office and may be obtained upon request by the RESIDENT. Maintenance and repair charge bills shall become due and payable 14 days form written notice by MANAGEMENT to the RESIDENT, or upon completion of the Grievance process, if timely requested. Said notice shall provide that RESIDENT has the right to ask for an explanation of the charges and, if RESIDENT does not agree with the explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure.

   RESIDENT is responsible for an operational, working smoke alarm in the dwelling unit. The lease may be terminated if the RESIDENT, RESIDENTS or any guest or invitee removes, disconnects or unwires any smoke alarm.

8. **ANNUAL REDETERMINATION OF RENT, DWELLING SIZE, AND ELIGIBILITY:**
   a. RESIDENT shall have his/her choice of any applicable rent determination process as then available, and which presently include either the "Flat Rent" or "Income Based Rents".
   b. At least once each year RESIDENT agrees in a timely manner to furnish accurate and conclusive information as requested by MANAGEMENT about income, employment, and members of the family for use by MANAGEMENT in determining whether the rental amount should be changed, whether the dwelling size is still appropriate for RESIDENT'S needs, and whether RESIDENT is still eligible for low-rent housing. This determination shall be made in accordance with the provisions set forth in MANAGEMENT'S Statement of Policies governing leasing and occupancy posted in MANAGEMENT'S office.
   c. If the "Flat Rent" is chosen as a rent determination process, MANAGEMENT'S review of income and employment will only be completed once every 36 months. RESIDENT must, within ten (10) days, inform MANAGEMENT of any additions of a minor to the family composition. RESIDENT must request, **in writing and in advance**, for the addition of an adult to the family composition.
   d. Any change in rent required as a result of this redetermination shall be made effective the first of the month following the date of the re-examination.
   e. When a re-examination is completed, MANAGEMENT will, if necessary, prepare and execute a new lease or mail a written "Change of Rent Notice" to the RESIDENT showing the change in the amount of monthly rent including the amount of retroactive rent (determined in accordance with paragraph 10) due, if any, resulting from such re-examination or redetermination. The RESIDENT agrees to accept the "Change of Rent Notice" and execute an application for continued occupancy as amendments to this Lease.
   f. Should MANAGEMENT determine that a rent change (other than a utility allowance change) is necessary, RESIDENT shall have the right to an explanation of these changes. If RESIDENT does not agree with the explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure.
   g. Rents will not be reduced if Welfare Assistance (TANF) is reduced due to:
      a. Fraud;
      b. Failure to participate in economic self sufficiency programs or;
      c. Failure to comply with work activities required.
   h. Community Service – All adults residents (18 and over) must:
      a. Contribute 8 hours per month of community service or;
      b. Participate in an economic self-sufficiency program for 8 hours per month.
      The exceptions of this Community Service requirement and condition to this lease are where RESIDENT is:
      a. Elderly;
      b. Blind or disabled defined under law and who are unable to comply with the community service requirement, or;
      c. Caretaker of such an individual;
      d. Working/ exempted from work by State; and
      e. Receiving TANF and not in noncompliance with State or TANF requirements.

9. **REPORTING INTERIM CHANGES IN INCOME AND FAMILY COMPOSITION:**
   a. The RESIDENT agrees as an express condition to this lease, to report the following changes in family circumstances within ten (10) days of the change:

      1. A loss of addition to the family through marriage reconciliation, divorce, permanent separation, birth, death, desertion, or any other continuing circumstances.

      2. Unemployment or re-employment of any member for any reason.

      3. Any changes in the amount of type of public assistance received by any member of the family.

      4. Any changes in income for any member of the family.

      5. Commencement or discontinuance of General Relief.

   b. If these changes result in a decrease in the RESIDENT'S rent, the reduced rental rate shall become effective the first of the following month.

   c. If the reported changes result in an increase in the RESIDENT'S rent, the higher rate shall take effect the first of the second month following the mailing of the "Notice of Review Determination: except where the provisions of Paragraph 10 apply.

   d. Should MANAGEMENT determine that a rent change is necessary, RESIDENT shall have the right to an explanation of the change(s). If RESIDENT does not agree with the explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure.

10. **RETROACTIVE RENT CHARGES:** If the RESIDENT has failed to report changes in family circumstances as required in Paragraph 9 or misrepresented to MANAGEMENT the facts upon which rent is determined, and this misrepresentation or failure to report facts results in the RESIDENT paying less rent than he/she should have been charged, MANAGEMENT shall adjust the rent to the proper amount.

    a. The increase in rent may be made retroactive to the first day of the second month after the change in family circumstances occurred.

    b. The new increased rental rate and all retroactive rent shall be due and payable on the first of the month following receipt of the "Notice of Review Determination."

    c. Should MANAGEMENT determine that a rent change is necessary, RESIDENT shall have the right to an explanation of these changes. If RESIDENT does not agree with the explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure.

11. **REQUIRED TRANSFER DUE TO CHANGE IN FAMILY COMPOSITION:** If MANAGEMENT determines in its sole discretion, that the size of the dwelling unit is no longer appropriate to RESIDENT'S needs, RESIDENT shall be required to move to another unit of appropriate size within the community in which he/she lives, and giving RESIDENT a reasonable time in which to move. RESIDENT may ask for an explanation of the specific reason for the transfer. If RESIDENT does not agree with MANAGEMENT'S explanation, the RESIDENT shall have the right to request a hearing under MANAGEMENT'S Grievance Procedure. If RESIDENT rejects the offer of an appropriate size unit, MANAGEMENT shall not be obligated to offer any other unit, and MANAGEMENT may consider this as reasonable grounds for terminating this Lease in accordance with the provisions of Paragraph 19.

12. **OCCUPANCY OF THE DWELLING UNIT:**

    a. RESIDENT agrees neither to assign this Lease; nor to sublet or transfer possession of the premises; nor to give accommodation to guests, roommates, boarders or lodgers without the prior written consent of MANAGEMENT. RESIDENT further agrees not to use or permit the use of the dwelling unit for any purpose other than as a private residential dwelling unit solely for the RESIDENT and members of his/her household as set forth in Paragraph 3 above, unless MANAGEMENT has given written approval for legal profit making activities by members of the household which do not interfere with the unit for residence. This provision does not exclude reasonable accommodation of RESIDENT'S guests or visitors, not to exceed two weeks without the prior written approval of MANAGEMENT. RESIDENT agrees to abide by all necessary and reasonable regulations of MANAGEMENT for the benefit and well being of the housing project and the RESIDENT. In the event RESIDENT(S) becomes ineligible for occupancy, he/she/they agree(s) to vacate the premises upon MANAGEMENT'S request.

    b. RESIDENT agrees to repay and indemnify MANAGEMENT for any and all liability arising before termination of this lease for personal injuries or property damage caused by negligent, willful, or intentional conduct of RESIDENTS and RESIDENT'S guests or invitees.

    c. RESIDENT may, at any time during tenancy, request permission for occupancy by a foster child or a live-in aide for a handicapped member of the household. Such request should be in writing and may or may not be granted in MANAGEMENT'S discretion but will be considered in accordance with MANAGEMENT'S Policy and Procedure Manual.

13. **RESIDENT OBLIGATIONS:** The RESIDENT shall:

    a. Comply with all obligations imposed upon tenants by applicable provisions of State and local building housing codes materially affecting health and safety;

    b. Report immediately to the appropriate Federal, State, or local governmental agency any case of infectious or contagious disease occurring in the family or among any person living or staying in the dwelling unit;

    c. Keep the premises and such other areas as may be assigned to him/her for his/her exclusive use in a clean and safe condition;

    d. Dispose of all ashes, garbage, rubbish, and other waste from the premises in a timely, sanitary and safe manner;

    e. Use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilation, air conditioning, and other facilities at the dwelling place and common areas;

    f. Promptly notify MANAGEMENT of the need for repairs to the dwelling unit and known unsafe conditions in the common areas and grounds of the project which may lead to damage or injury; *[handwritten: like fire, road blocked, reported cat attack]*

    g. Refrain from, and cause his/her household and guests to refrain from destroying, defacing, damaging, or removing any part of the premises or project;

    h. Pay for the repair of all damages, except for normal wear and tear, to the premises, project buildings, facilities, or common areas according to Paragraph 7;

    i. Conduct himself/herself and cause other persons who are on the premises with his/her consent to conduct themselves in a manner which will not disturb his/her neighbors' peaceful enjoyment of their dwelling units and will encourage the maintenance of the project in a decent, safe, and sanitary condition. RESIDENT and RESIDENT'S family, guests, and invitees may not play his/her/their television, stereo, radio or any other amplified electrical device, or any musical instrument that may disturb other tenants, neighbors or MANAGEMENT;

    j. Refrain from any illegal or criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or employees of the Housing Authority; *[handwritten: like feeding wild]*

    k. Refrain from any drug-related criminal activity on or off the premises including, but not limited to, the growing manufacturing or producing of marijuana, methamphetamine or any illegal narcotic at the dwelling unit or any premises of MANAGEMENT'S Assisted Housing;

    l. RESIDENT agrees that premises are not to be used for any illegal purposes, not to display on or about the premises any signs without the prior written approval of MANAGEMENT, not to make any repairs or install any equipment without consent of MANAGEMENT;

    m. RESIDENT agrees that in the interests of sanitation and safety he/she will not keep or permit to be kept, any dog, cat, or other animal, in, on, or about the premises, without MANAGEMENT'S prior written consent, in which case there is attached hereto, and made a part hereof, an addendum to lease. "Rules for pets:"

Adopted 12/20/01 Resolution #752                         4

n. RESIDENT shall observe and comply with and perform and execute all Federal, State, County, and Municipal statutes, ordinances, rules, and regulations and orders and any and all regulations and orders of any Federal, State, County, and Municipal Board of public authority or officer which in any way affect or relate to, or are in any way applicable to the premises, or use or occupation thereof. RESIDENT shall also abide by necessary and reasonable regulations promulgated by MANAGEMENT for the benefit of the project and all RESIDENTS, which are posted in the project office and incorporated by reference in this lease.

o. RESIDENT may not repair automobiles, motorcycles, or other motor or electrical vehicles, or any heavy machinery anywhere at the dwelling unit, in the parking area, garage, or driveway, or on another portion of the MANAGEMENT'S Assisted Housing.

p. RESIDENT must maintain, at his/her expense, batteries (if required) in the operational Smoke Alarm management has provided.

q. RESIDENT and the RESIDENT'S family members over the age of 18, who reside at the dwelling unit, must participate in Community Service or be involved in a Self Sufficiency Program.

*[handwritten: Please advise what is this?]*

14. **MANAGEMENT OBLIGATIONS:** MANAGEMENT shall:

a. Maintain the premises and the Development in decent, safe, and sanitary condition;

b. Comply with the requirements of applicable State and local building codes, any housing codes, and HUD regulations materially affecting health and safety;

c. Make necessary repairs to the premises, at its own expense, except as otherwise provided in this Lease Agreement;

d. Keep Development buildings, facilities, and common areas otherwise not assigned to the resident for maintenance and upkeep, in a clean and safe condition;

e. Maintain in good and safe working order and condition the electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances at the dwelling unit which are supplied or required to be supplied by MANAGEMENT;

f. Provide and maintain receptacles and facilities for the deposit of ashes, garbage, rubbish, and other waste removed from the premises by the RESIDENT in accordance with Paragraph 13(d);

g. Supply running water and reasonable amounts of hot water and heat at appropriate times of the year, except where heat and hot water are generated by an appliance within the exclusive control of the RESIDENT and supplied by a direct utility connection; and

h. Make reasonable attempts to notify RESIDENT of the specific grounds for any proposed adverse action by MANAGEMENT.

15. **DEFECTS HAZARDOUS TO LIFE, HEALTH, OR SAFETY:** In the event the premises are damaged to the extent that conditions are created which are hazardous to life, health, or safety of the occupants, the RESIDENT must immediately notify MANAGEMENT of the damage and:

a. MANAGEMENT shall make repairs within a reasonable time but the cost of said repairs shall be charged to the RESIDENT if the damage was caused by RESIDENT, members of his/her household, invitees or guests;

b. In circumstances where necessary repairs cannot be made within a reasonable time MANAGEMENT shall offer, if available, standard alternative accommodations;

c. In the event repairs are not made in accordance with (a.) above, alternative accommodations are not provided in accordance with (b.) above, abatement of rent shall occur in proportion to the seriousness of the damage and loss in value as a dwelling. NO ABATEMENT OF RENT SHALL OCCUR IF THE RESIDENT REJECTS ALTERNATIVE ACCOMMODATIONS OR IF THE RESIDENT, RESIDENT'S HOUSEHOLD OR GUESTS CAUSED DAMAGE.

16. **PRE-OCCUPANCY AND TERMINATION INSPECTIONS:** When RESIDENT moves in, MANAGEMENT and RESIDENT, or his representative, shall jointly inspect the dwelling unit and all fixtures, appliances and furnishings, if applicable, and thereafter MANAGEMENT shall give RESIDENT a written inventory of the condition of the dwelling unit and said fixtures, appliances and furnishings therein. MANAGEMENT and RESIDENT shall sign this inventory. When RESIDENT moves out, MANAGEMENT (jointly with RESIDENT and/or his representative, if possible) will inspect the dwelling unit and give RESIDENT a written statement of the charges for damage, if any, for which RESIDENT is responsible.

*[handwritten: Please show me inventory of receipt of cleanup from unit – mats allowed – overlooked inside – rugs & drapes cleaned – receipt proof]*

17. **ENTRY OF PREMISES DURING TENANCY:**

a. RESIDENT agrees that the duly authorized agent, employee, or representative of MANAGEMENT shall be permitted to enter RESIDENT'S dwelling unit, for the purpose of examining its condition or contents or for making improvements or repairs. Such entry may be made only during reasonable hours, after advance notice in writing to RESIDENT of the date, time, and purpose. However, MANAGEMENT shall have the right to enter RESIDENT'S dwelling unit without prior notice to RESIDENT if MANAGEMENT reasonably believes that an emergency exists that requires such entrance. MANAGEMENT must promptly notify RESIDENT in writing of the date, time, and purpose of such entry, and of the emergency, which necessitated it.

b. In the event that RESIDENT and all adult members of the household are absent from the premises at the time of entry, MANAGEMENT shall leave a written statement specifying date, time, and purpose of entry.

    c.   <u>RESIDENT may not change the lock or add a lock.</u>

    d.   <u>If the RESIDENT is visually impaired, all notices shall be in an accessible format.</u>

18. **NOTICE PROCEDURE:** Except as provided in Paragraph 17, any notice to the RESIDENT shall:

    a.   Be in writing and delivered personally to the RESIDENT or an adult member of the household residing in the dwelling unit: or

    b.   Affixed to the door of the premises and sent by first class mail, properly addressed.

<u>If the RESIDENT is visually impaired, all notices shall be in an accessible format</u>. Notice given pursuant to the Lease shall be deemed to have been given or served at the time the same shall be deposited in the United States mail, postage prepaid in the manner aforesaid, or personally served.

19. **TERMINATION OF LEASE:** RESIDENT and MANAGEMENT consider each and every term, covenant, and provision of this lease to be material and reasonable such that any violation shall be grounds for termination in the manner as follows:

    a.   RESIDENT may terminate this Lease at any time by giving thirty- days (30) written notice as specified in Paragraph 18. RESIDENT agrees to move promptly and leave the unit in a clean and good condition (except for reasonable wear and tear), and to return the keys to MANAGEMENT when he/she vacates. Rent may continue until the keys are returned to MANAGEMENT'S office.

    b.   This Lease shall terminate upon the death of the RESIDENT, spouse or significant other adult. In the event there is a surviving adult RESIDENT, MANAGEMENT may, if it so elects enter into a new lease with said surviving RESIDENT. In the event there is no surviving RESIDENT, MANAGEMENT may, if it so elects, enter into a lease with a person who is a member of the household if said person otherwise meets the requirements for occupancy as contained in the <u>Statement of Policy of MANAGEMENT</u>. <u>A live-in aide is not considered a member of the household.</u>

    c.   <u>Should the circumstances arise that there is no longer an adult family member in the unit, MANAGEMENT may, at its discretion, admit a relative or guardian to live in the unit and assume the obligation of the Lease as Head of Household.</u>

    d.   MANAGEMENT at any time may terminate this Lease by giving written notice pursuant to Paragraph 18 and Section 1162 of the Code of Civil Procedure. This Lease shall automatically terminate at, and RESIDENT shall vacate the premises no later than, the time of expiration of the period hereinafter set forth. Such notice terminating said Lease and RESIDENT'S tenancy there under, may only be given for reasonable cause, such as, but not limited to, the reasons stated below:

        1.   Non-payment of rent. MANAGEMENT shall give fourteen (14) days' written notice of termination for such cause.

        2.   Creation or involvement in criminal activity that threatens the health or safety of other persons or MANAGEMENT employees or the right to peaceful enjoyment of the premises of other RESIDENTS. Notice in such cases shall be limited to a reasonable time commensurate with the urgency of the situation, but not less than seven (7) days.

        3.   Drug-related criminal activity on or near the premises. Notice shall be given the same as 2., above.

        4.   Where there are grounds for eviction for criminal or drug-related activity, the decision when and whether to evict is a discretionary MANAGEMENT judgment.

        5.   Grounds for termination if RESIDENT is a "Fleeing Felon" or is harboring a "Fleeing Felon". The term "Fleeing Felon" shall include, but is not limited to, a person who seeks to avoid prosecution, custody, or confinement after conviction, for a felony, or violating a condition of probation or parole imposed under Federal or State Law.

        6.   If a RESIDENT is evicted for engaging in criminal activity, including drug-related criminal activity, MANAGEMENT shall notify the local post office servicing the community that the tenant no longer resides at the address. RESIDENT will not be allowed to return to public housing property for pickup of mail.

        7.   This Lease and the Tenancy created there under, may be terminated by MANAGEMENT for reasonable cause, including but not limited to, any material misrepresentation or omission made by RESIDENT in his/her application, the violation of any provision of the Lease, the non-payment of rent and/or any other charge required of RESIDENT under this Lease Agreement or any prior Lease agreement between RESIDENT and MANAGEMENT for the premises described herein or any other tenants or MANAGEMENT, serious or repeated damage to the Premises, failure to maintain the Premises in good condition including grounds assigned for RESIDENT maintenance, creating physical hazards, creating a nuisance or disturbing the peace of the neighborhood, giving of any false or misleading statements of fact required by MANAGEMENT in connection with RESIDENT'S tenancy or being ineligible for occupancy of low-rent housing. MANAGEMENT shall give thirty-days (30) written notice of such causes.

*[handwritten annotation: "what? this?"]*

        8.   <u>Noncompliance of Community Service Requirements.</u>

    e.   Notices of termination to the RESIDENT shall state the reason or reason's for the termination, shall inform the RESIDENT of his/her right to make a reply and of his/her right to request a hearing in accordance with

Adopted 12/20/01 Resolution #752          6

MANAGEMENT'S Grievance Procedure. RESIDENT shall also be informed of his/her right to examine MANAGEMENT documents that are directly relevant to termination of the Lease.

    f. The failure of MANAGEMENT to insist, in any one or more instances, upon a strict performance of any of the covenants or agreements of this Lease or to exercise any option contained, shall not be considered as a future waiver or relinquishment of said covenants, agreements, or options, but the same shall continue and remain in full force and effect. <u>The receipt by MANAGEMENT of rent with the knowledge of the breach of any covenant or condition hereof shall not be deemed a waiver of such breach, and no waiver by MANAGEMENT of any of the provisions hereof shall be made unless expressed in writing and signed by MANAGEMENT, its representatives or agents.</u>

20. **ABANDONMENT OF DWELLING UNIT:** In the event that the monthly rental is unpaid and other facts exist tending to suggest that RESIDENT has moved from the premises, MANAGEMENT may presume that RESIDENT has abandoned the dwelling unit and the contents thereof unless notified otherwise. This Paragraph does not relieve RESIDENT of his/her duty to pay rent until and unless MANAGEMENT determines that the dwelling has been abandoned.

21. **GRIEVANCE PROCEDURES:** All grievances or appeals arising under this Lease shall be processed and resolved according to the Grievance Procedure of MANAGEMENT that is in effect at the time such grievance or appeals arise. This procedure is posted in the MANAGEMENT office and attached hereto. All matters concerned by this Lease, including but not limited to rental payments, other charges, or any Lease violations, are subject to these Grievance Procedures, except that RESIDENTS whose tenancy is terminated based upon creation or involvement in a crime or of a criminal nature that threatens the health or safety of other persons or MANAGEMENT'S employees or the right to peaceful enjoyment of the premises of and by other RESIDENTS shall not be subject to the Grievance Procedure, nor shall persons involved in drug-related criminal activity be subject to the Grievance Procedure. MANAGEMENT'S determination that a drug-related activity or criminal activity that threatens the health or safety of other persons or MANAGEMENT employees, or peaceful enjoyment as herein provided exists, shall be final and immediate.

22. **CHANGES:** This Lease, together with any future adjustments of rent or dwelling unit, is the entire agreement between MANAGEMENT and RESIDENT. No changes herein shall be made except in writing, signed, and dated by both parties except as provided for above or hereafter. The Schedule of Charges, Conditions of Occupancy and other rules and regulations of MANAGEMENT, and Grievance Procedure may be modified from time to time by MANAGEMENT provided that RESIDENT(S) shall be given thirty (30) days written notice of such change including the reasons thereof, and further be given an opportunity to present written comments for consideration by MANAGEMENT. Notice advising of proposed changes, as hereinabove required, shall be deemed given when MANAGEMENT delivers directly or mails a notice to each RESIDENT as well as posts said notice in a conspicuous place in MANAGEMENT'S office.

23. A copy of the current Grievance Procedure adopted by MANAGEMENT is attached to this Lease Agreement.

### CONDITIONS OF OCCUPANCY


*(handwritten margin note: "Where are the planting rules")*

A. RESIDENT agrees to maintain fully the premises including but not limited to <u>dwelling unit, fixtures, sidewalks, lawns, shrubbery and grounds (front, sides, and rear of dwelling, not identified as common area)</u> assigned to him or her in a clean and sanitary condition under terms of this Agreement and to report immediately to MANAGEMENT any accident, injury, damage, loss or need of service or repairs of water or gas pipes, electric wiring, drains, toilets, fixtures, or any other property or equipment covered under this lease, including all breakage, damage, or loss of any kind such as damage from overflow of water from sinks, bathroom, toilets, or other basins.

B. RESIDENT agrees to deliver and place all garbage, refuse and trash in proper containers at designated locations. RESIDENT further agrees where applicable that he or she will dispose of rubbish, garbage, and waste in the manner prescribed by MANAGEMENT and, additionally, to secure and maintain regulation trash cans for such purpose while residing in the dwelling unit. MANAGEMENT shall approve all trashcans.

*(handwritten margin note: "what? I do have art in my garden and patio and decor it's like freedom gesture")*

C. RESIDENT shall make no alterations or additions such as installing aerials or their <u>guy wires, fences, shades, awnings or window guards, etc. to the premises. If any repairs or adjustments are necessary, the RESIDENT shall notify MANAGEMENT and shall make no repairs or adjustments or affix anything to the dwelling structure inside or out without the express permission therefore in writing first had and obtained from MANAGEMENT.</u> In the event said permission is obtained and said alterations or additions are approved, they shall be considered permanently affixed to the property and shall remain on and in, and be surrendered with the said leased premises at the termination of this Lease unless otherwise provided in writing by MANAGEMENT.

D. RESIDENT agrees to refrain from driving, repairing, or parking any vehicles on the lawn or sidewalks and to refrain from parking trucks, trailers, or non-operating vehicles on the lawn, driveway, or other areas of use provided under provisions of the Lease. <u>Vehicles left in a non-operating condition for more than 72 consecutive hours without written permission of MANAGEMENT shall be deemed abandoned and MANAGEMENT may have them removed at the expense of the owner.</u>

E. <u>RESIDENT agrees that a B-B gun, slingshots, firearms, or any other propellant device shall not be permitted or used on the premises.</u>

F. <u>RESIDENT agrees that he will not make or cause to be made or permit any disturbance or unreasonably loud noises in or at the dwelling unit or on the premises.</u>

G. RESIDENT agrees to refrain from waste or excessive use of water, gas, electricity, or other fuel or utility service. MANAGEMENT may, at its discretion, monitor and regulate the use of the water, gas, and electricity, which includes assessing surcharges for excessive use of the water, gas, electricity, or other fuel or utility service in accordance with the Schedule of Utility Allowances described herein.

H. RESIDENT agrees to refrain from permitting his or her children from playing on roofs, in public halls and stairways, fire ladders, parking spaces, trees, and shrubbery and garbage enclosures or areas.

Adopted 12/20/01 Resolution #752         7

I.  RESIDENT agrees to refrain from using plumbing or electrical equipment for any purposes other than those for which they were constructed or installed.

J.  All personal property left on the premises upon termination of lease and all personal property removed from the premises by MANAGEMENT at the time of physical eviction of the RESIDENT for any cause whatsoever shall be deemed to be abandoned by the RESIDENT in the event it has not been claimed within thirty (30) days after physical eviction and may be disposed of by MANAGEMENT pursuant to Section 1988 of the Civil Code of the State of California. In the even of the RESIDENT'S death (Paragraph 19(b) of the Lease Agreement) MANAGEMENT may store or cause to be stored said property that has been left on the premises.

K.  RESIDENT agrees to take every care to prevent fires, not to keep gasoline, solvents, or other inflammable materials or substances in the dwelling unit and to exercise particular caution with respect to children playing with matches.

L.  RESIDENT or any family member may not disconnect the smoke alarms in the dwelling unit and agrees to MANAGEMENT charges of 15.00 per occurrence of an inoperable smoke alarm if MANAGEMENT finds the alarm disconnected, down, or otherwise disabled by RESIDENT.

I/WE, THE RESIDENT(S) WHOSE SIGNATURE(S) APPEAR(S) IMMEDIATELY BELOW, HAVE READ AND DO UNDERSTAND AND HEREBY AGREE TO THE PROVISIONS OF THIS LEASE AND THE CONDTIONS OF OCCUPANCY SET FORTH IN THIS LEASE; AND I/WE HEREBY FRUTHER AGREE THAT FAILURE TO OBSERVE AND FOLLOW SAID LEASE PROVISIONS AND CONDITIONS OF OCCUPANCY WILL BE JUST AND PROPER CAUSE FOR THE TERMINATION AND CANCELLATION OF THIS LEASE BY MANAGEMENT. I/WE HEREBY FURTHER AGREE THAT UPON EXPIRATION OF THE TIME LIMIT CONTAINED IN ANY WRITTEN NOTICE OF CANCELLATION FROM MANAGEMENT REPRESENTATIVE, I/WE WILL VACATE THE PREMISES COVERED BY THIS LEASE, WITHOUT DISTURBANCE OR DELAY. I/WE ALSO UNDERSTAND THAT THIS LEASE CONTAINS A PROVISION FOR THE AUTOMATIC RENEWAL FOR SUCCESSIVE TERMS OF ONE CALENDAR MONTH EACH, UNLESS TERMINATED BY TEN (10) DAYS' PRIOR WRITTEN NOTICE BY RESIDENT, OR THIRTY (30) DAYS' PRIOR WRITTEN NOTICE BY MANAGEMENT (OR AS OTHERWISE STATED HEREIN).

Executed in Duplicate

COMMUNITY DEVELOPMENT COMMISSION
OF MENDOCINO COUNTY HOUSING AUTHORITY

By_____
                Date

____Public and Agency Owned Housing Manager _
Title

Heather Blough _____
Printed Name

RESIDENT(S)

*Karen Ann*    7/8/04
Signature          Date

_____
Signature          Date